IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **3 STEP SPORTS LLC** | : | **CIVIL ACTION** |
| | : | |
| v. | : | NO. 25-2853 |
| | : | |
| **VANGUARD ELITE VOLLEYBALL ACADEMY, LLC, CENTER COURT EVENTS, LLC, BRIAN MCCANN, CHRISTINE A. MCCANN, BRIDGET CAREY, NICOLE REELS, JOHN SCHOTT, CHRISTOPHER SMITH, G3 SPORTS, LLC, MCB SOLUTIONS LLC, L&N BUSINESS ADVISORY LLC** | : : : : : : : : | |

## **MEMORANDUM**

**KEARNEY, J.**                                                                                                   **November 25, 2025**

An employer sued its former employees and their new allegedly competing businesses under a variety of theories. The former employees moved to dismiss some but not all claims against them. We dismissed some inadequately pleaded claims but the remaining claims are proceeding into discovery. The former employees then counterclaimed arguing this entire lawsuit is an abuse of process under Pennsylvania law. We enjoy personal jurisdiction over the compulsory counterclaim. But the former employees cannot state an abuse of process claim based on the filing of a lawsuit (especially when they did not challenge several claims as insufficiently pleaded) as a matter of law. We dismiss the abuse of process counterclaim.

**I. Background procedural steps.**

3 Step Sports, LLC sued former employee Brian McCann and his wife, Christine McCann, and four other former employees, Nicole Reels, Christopher Smith, Bridget Carey, and John Schott, because each of these persons left 3 Step to start their own youth volleyball club teams and events businesses. 3 Step alleged their former employees (along with their new businesses in part)

breached confidentiality agreements, breached their duty of loyalty to 3 Step while employed, tortiously interfered with 3 Step's business relationships, misappropriated trade secrets in violation of federal and Pennsylvania law, aided and abetted breaches of fiduciary duties, and conspired to injure 3 Step.[1]

The former employees and their businesses moved to dismiss some, but not all, of 3 Step's amended Complaint.[2] We held oral argument and dismissed with prejudice 3 Step's breach of contract claims alleging breaches of non-solicitation and non-competition agreements against Ms. Reels, Ms. Carey, Mr. Smith, and Mr. Schott, finding no such contractual obligations as to these four individuals.[3] We granted 3 Step leave to file a second amended Complaint narrowly tailored consistent with Federal Rules of Civil Procedure 1, 8, and 11.[4]

3 Step timely filed a second amended Complaint asserting the same claims except the breach of contract claims we dismissed with prejudice.[5] Mr. McCann, Mrs. McCann, Ms. Reels, Ms. Carey, Mr. Smith, and Mr. Schott, and their businesses answered the second amended Complaint.[6] Mr. McCann, Ms. Reels, Ms. Carey, Mr. Smith, and Mr. Schott, and their businesses asserted a counterclaim against 3 Step for common law abuse of process for filing this ongoing case.[7]

**II.   Alleged abuse of process facts.**

The five former employees and their businesses allege 3 Step went beyond simply filing a second amended Complaint against them. They allege 3 Step used baseless allegations to disseminate unsupported claims to families, coaches, and other third parties to deter, chill, or otherwise discourage doing business with them.[8]

The former employees allege 3 Step's President, Greg Walbaum, knew or should have known 3 Step's contracts with Ms. Carey, Ms. Reels, Mr. Schott, and Mr. Smith did not contain

2

restrictive covenants but sued them anyway and persisted in maintaining claims based on non-existent restrictive covenants until we dismissed the claims with prejudice.⁹ Ms. Carey, Ms. Reels, Mr. Schott, and Mr. Smith allege 3 Step asserted non-existent contract claims against them with the "ulterior motive" of deterring families, youth athletes, coaches, and others from participating in club sports and competitions with them, Mr. McCann, and their businesses.¹⁰

3 Step's agents, including its Regional Vice President Kate Henwood, allegedly disseminated copies of 3 Step's Complaint and amended Complaint to coaches working for 3 Step, threatening 3 Step "would initiate similar legal proceedings if coaches were to stop working with 3 Step."¹¹ 3 Step told them "'not to mess with a billionaire,' overtly insinuating that the deep private equity pockets behind 3 Step would do precisely what they are doing here: using the legal system to bleed the finances of anyone who dare compete with them."¹² One or more unidentified coaches at 3 Step have chosen not to participate in activities hosted by former employees for fear of 3 Step's threats.¹³

Unidentified agents of 3 Step also provided copies of 3 Step's Complaint or first amended Complaint to (or disclosed to) parents of youth athletes accompanied by statements from 3 Step's Regional Vice President Henwood 3 Step would "shut down" the former employees' businesses and youth athletes participating in tryouts at the former employees' businesses would be left without a sports program because of the litigation.¹⁴ Unidentified parents of youth athletes elected not to participate in sports events offered by the former employees.¹⁵

The former employees and their businesses allege 3 Step took these actions maliciously and intentionally in a calculated effort to coincide with tryout season to deter families from the former employees' businesses even though 3 Step alleged non-solicitation and non-competition claims against Ms. Carey, Ms. Reels, Mr. Schott, and Mr. Smith with no underlying contract.¹⁶ 3

Step also used its meritless claims after filing of its Complaint to demand Ms. Carey, Ms. Reels, Mr. Schott, and Mr. Smith stop operating their youth sports businesses and agree to two-year restrictive covenants.[17]

3 Step used its meritless claims specifically against Mr. Smith to eliminate him as a coach for USA Volleyball which organization temporarily suspended him until Mr. Smith appealed his suspension causing him additional costs and fees.[18] 3 Step used its Complaint and amended Complaint to demand the return of social media accounts it does not own and filed a lawsuit against Mark Campion, another former employee, in the United States District Court of the District of Massachusetts in an effort to propound duplicative discovery.[19]

3 Step's Chief Executive Officer Chad Gruen made a statement to unidentified persons at an unidentified time, "If you're going to be competing with me, I'm going to scorch the earth beneath you" and told current and former 3 Step employees he will "make an example out of" the former employees and will "put them out of business."[20] Former employees allege this conduct evidences 3 Step's use of legal process—"namely the filing of a complaint"—for an unintended purpose constituting abuse of process under Pennsylvania law.[21]

### III.  Analysis

3 Step now moves to dismiss its former employees' abuse of process counterclaim arguing: (1) the counterclaim does not properly allege diversity jurisdiction; (2) the *Noerr-Pennington* doctrine precludes a common law abuse of process counterclaim because former employees moved to partially dismiss 3 Step's amended Complaint, constructively conceding 3 Step's objectively reasonable basis to bring its lawsuit; (3) the abuse of process counterclaim "hinges" on the "predominance of two dismissed predicates of a claim" otherwise surviving the motion to dismiss and does not constitute abuse of process; and (4) they fail to state a claim for abuse of process.[22]

The former employees respond with their allegations 3 Step republished or disseminated its lawsuit outside of the legal context to discourage and intimidate coaches, parents, and players from participating in their businesses; asserted breach of contract claims against Ms. Carey, Ms. Reels, Mr. Schott, and Mr. Smith based on non-existent non-competition and non-solicitation obligations to coerce them into agreeing to enter two-year non-compete agreements and "shut down" their businesses; filed a duplicative lawsuit in the District of Massachusetts against Mr. Campion in an effort to inflate legal costs; and used its lawsuit to attempt to "sideline" Mr. Smith by manipulating USA Volleyball to temporarily suspend him and to demand the return of social media accounts to which 3 Step is not entitled.[23]

We may exercise personal jurisdiction. We conclude the allegations do not, as a matter of law, constitute abuse of process. We need not address the other arguments raised by 3 Step and dismiss the abuse of process counterclaim.

**A.  We enjoy subject matter jurisdiction over the counterclaim.**

3 Step first argues we must dismiss the abuse of process counterclaim because the former employees fail to properly allege diversity jurisdiction on which the counterclaim depends. 3 Step invoked our federal question jurisdiction under the federal Defend Trade Secrets Act.[24] 3 Step invoked our supplemental jurisdiction of its state law claims because the state law claims are related to, and form part of, the same case or controversy.[25] But 3 Step turns around and asserts we lack jurisdiction over the abuse of process counterclaim because former employees did not properly allege diversity jurisdiction.

We reject this argument in its entirety. It is almost frivolous given the former employees' claim is directly responsive to the filing of this lawsuit. The Federal Rules of Civil Procedure define a compulsory counterclaim: "[a] pleading must state as a counterclaim any claim that—at

the time of its service—the pleader has against an opposing party if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction."[26]

Compulsory counterclaims (as contrasted with permissive counterclaims) generally fall within the supplemental jurisdiction of a district court and do not require an independent basis for subject matter jurisdiction.[27] A counterclaim is compulsory if it "bears a logical relationship to an opposing party's claim."[28] Our Court of Appeals considers a "logical relationship" to exist "where separate trials on each of the[ ] respective claims would involve a substantial duplication of effort and time by the parties and the courts."[29] The inquiry "requires essentially the same comparison between claims as the res judicata analysis."[30] We are directed by our Court of Appeals to look for "meaningful overlap between the facts and law underlying the different claims at issue."[31]

Former employees invoke our supplemental jurisdiction over their counterclaim, arguing they are compulsory as based on the same common nucleus of operative facts as 3 Step's claims.[32] 3 Step does not offer an argument. It waived an argument against a compulsory counterclaim over which we may exercise our supplemental jurisdiction. We find the claims asserted by 3 Step against the former employees involving their discussions with customers and the abuse of process counterclaim involving the employer's discussion have meaningful overlap in facts and law. The former employees' abuse of process counterclaim is compulsory under Rule 13(a).

We exercise our supplemental jurisdiction over the abuse of process counterclaim.

### B. The former employees do not allege facts supporting a claim for abuse of process.

The former employees invoked our personal jurisdiction for an abuse of process counterclaim against 3 Step who brought the case here. But they cannot proceed on an abuse of process claim as pleaded.

The common law tort of abuse of process under Pennsylvania law is defined as "the use of legal process against another primarily to accomplish a purpose for which it is not designed."[33] The elements of an abuse of process claim are: (1) defendant used a legal process against the plaintiff; (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm caused to plaintiff.[34] Under Pennsylvania law, it is not enough "the defendant had bad or malicious intentions or that the defendant acted from spite or with an ulterior motive."[35] There must be "an act or threat not authorized by the process, or the process must be used for an illegitimate aim such as extortion, blackmail, or to coerce or compel the plaintiff to take some collateral action."[36]

Pennsylvania law defines "legal process" broadly and "encompasses the entire range of procedures incident to the litigation process," including discovery proceedings, notices of depositions, and issuing subpoenas.[37] The "touchstone" of an abuse of process claim is "*subsequent* to the issuance of process, a party has perversely, coercively, or improperly used that process."[38] The initiation or maintenance of a lawsuit does not constitute abuse of process under Pennsylvania law.[39] Once legal process is initiated, process must be used primarily to accomplish an improper purpose.[40]

The former employees did not allege facts allowing us to plausibly infer an abuse of process. Recent decisions from our colleagues inform our conclusion. Judge Diamond dismissed an abuse of process claim brought by plaintiff Mr. Houck alleging the United States wrongfully prosecuted him for his pro-life activity near a crisis pregnancy center in Philadelphia.[41] Mr. Houck alleged FBI agents tortiously investigated him and sought to indict him in an effort to discourage and chill his pro-life activism protected by the First Amendment. Judge Diamond concluded Mr. Houck did not plausibly state a claim for abuse of process. Judge Diamond explained allegations the FBI committed tortious conduct in its investigation or sought an indictment to chill the exercise of Mr. Houck's First Amendment rights sound in malicious prosecution, not abuse of process.[42] Judge Diamond also explained once legal process is initiated, the initiator must then use the process primarily to accomplish an improper purpose and bad motivation does not qualify. There must be an allegation of an "improper 'act or threat' springing from the legal process itself," for example, extortion, "using process to pressure upon the other to compel him to pay a different debt or to take some other action or refrain from it."[43] Mr. Houck did not allege action other than the continuation of the criminal prosecution and Judge Diamond dismissed his claim.[44]

Judge Munley dismissed an abuse of process claim brought by a female college student against a male student and his lawyer.[45] The female student alleged the male student assaulted her and brought a Title IX claim against him. During the college's investigation, the male student admitted to the conduct but his attorney asserted a counterclaim against the female student claiming she assaulted him. The female student alleged the male student and his attorney asserted the counterclaim knowing it to be untrue, asserted the baseless claim in retaliation for her complaint, attempted to intimidate witnesses in the Title IX proceeding, and filed a civil action

against the female student for defamation based on the Title IX investigation. The college ultimately dismissed the male student's counterclaim and expelled him from the school.

Judge Munley concluded the female student did not allege "legal process" to support a claim for abuse of process because the alleged "process" is the counterclaim in the Title IX proceeding.[46] The female student did not cite authority, nor could Judge Munley identify authority, considering a counterclaim "legal process" on which an abuse of process claim can be brought.[47] Judge Munley, citing the Restatement (Third) of Torts, explained, "process . . . does not refer to the legal process generally. It refers to process in the more specific sense of the word familiar to lawyers: the instruments by which courts assert their jurisdiction and command others to appear, act, or desist. In short, 'process' generally means orders that are issued by courts at the behest of one of the parties, or that are otherwise backed by judicial authority."[48] Judge Munley concluded the counterclaim is "not an order issued by the court at the behest of one of the parties or backed by judicial powers such as a subpoena [and] [i]t is not a noticing of a deposition or other discovery proceeding."[49] Judge Munley concluded the alleged abusive counterclaim is the procurement or initiation of a civil proceeding which may give rise to a wrongful use of civil proceedings claim under Pennsylvania law, but does not constitute abuse of process.[50]

The authority cited by former employees does not support their abuse of process claim. In *EMC Outdoor, LLC v. Stuart*, Judge Quiñones dismissed an abuse of process counterclaim brought by a former employee sued by her former employer for breach of restrictive covenants, federal and state trade secrets statutes, and the federal computer fraud and abuse statute.[51] The former employee alleged her former employer sued her as a part of its strategy to deter competition by her and her new employer.

9

Judge Quiñones concluded the former employee did not state a plausible claim for abuse of process under Pennsylvania law because the former employee did not allege facts "sufficient to show [the former employer] used 'legal process against [her] in a way that constituted a perversion of that process.'"[52] Like Judge Munley, Judge Quiñones explained "legal process" forming the basis of an abuse of process claim is "extortion by means of attachment, execution or garnishment, and blackmail by means of arrest or criminal prosecution."[53]

Neither does Judge Marston's decision in *Patterson* support the former employees' argument.[54] In *Patterson*, a church sued Mr. Patterson seeking a declaration an arbitration award in an underlying state court case—involving a dispute between two factions of the church—did not apply to it. Mr. Patterson asserted a counterclaim against the church for abuse of process. Judge Marston concluded the abuse of process claim failed as a matter of law.[55] Judge Marston, relying on Judge Quiñones's decision in *EMC Outdoor*, found the church's complaint is not "process" and cannot support an abuse of process claim even where a lawsuit is initiated for vexatious and retaliatory purposes.[56]

The former employees' abuse of process claim here is nearly identical factually to Judge Quiñones's decision in *EMC Outdoor*, including the allegation by the former employee her former employer sued her to stop her from competing against it. The allegations here rely entirely on 3 Step's Complaint and amended Complaint. Accepting the allegations as true, as we must at this stage, the alleged conduct by 3 Step is the dissemination of its Complaint and amended Complaint to coaches, families, and others, threatening remarks to 3 Step coaches they would also be sued if they left 3 Step, and threatening remarks by 3 Step Officers Henwood and Gruen of "scorched earth" and "put [you] out of business" allegedly taken essentially to retaliate against former employees and to deter competition. This conduct is not abuse of process.[57]

Former employees do not plausibly state a claim for abuse of process. We dismiss the counterclaim for abuse of process which cites only the complaints as the process. We need not address 3 Step's other arguments.

## IV. Conclusion

We grant 3 Step's motion to dismiss the abuse of process counterclaim.

---

[1] ECF 40, second amended Complaint.

[2] ECF 29.

[3] ECF 37, ¶ 1.

[4] *Id.*, ¶ 3.

[5] ECF 40.

[6] ECF 47.

[7] *Id.* Mr. McCann (but not Mrs. McCann), Ms. Carey, Ms. Reels, Mr. Schott, and Mr. Smith, and their businesses Vanguard Elite Volleyball Academy, LLC, Center Court Events, LLC, and G3 Sports, LLC only (and not entities MCB Solutions LLC and L&N Business Advisory LLC) asserted counterclaims. *Id.* Mr. McCann asserted a counterclaim against 3 Step for breach of the separation agreement. 3 Step did not move to dismiss the breach of contract counterclaim.

[8] *Id.*, Counterclaim ¶ 12.

[9] *Id.*, ¶¶ 13–17. This argument does not involve Mr. McCann who concedes his obligations under restrictive covenants.

[10] *Id.*, ¶¶ 18–20.

[11] *Id.*, ¶¶ 21–22.

[12] *Id.*, ¶ 23.

[13] *Id.*, ¶ 24.

[14] *Id.* ¶¶ 25–26.

---

[15] *Id.* ¶¶ 27–29.

[16] *Id.*, ¶¶ 30–31.

[17] *Id.* ¶¶ 34–36.

[18] *Id.* ¶ 38.

[19] *Id.* ¶ 40; *see 3 Step Sports, LLC v. Campion*, No. 25-11603 (D. Mass).

[20] ECF 47, ¶¶ 44–46.

[21] *Id.* ¶ 47.

[22] ECF 49-1.

[23] ECF 52.

[24] 18 U.S.C. § 1836(c), 28 U.S.C. § 1331; ECF 40, ¶ 34.

[25] ECF 40, ¶ 35; 28 U.S.C. § 1367(a).

[26] Fed. R. Civ. P. 13(a)(1).

[27] 3 MOORE'S FEDERAL PRACTICE § 13.110[1][a] (3d ed. 2025).

[28] *M.R. v. Ridley Sch. Dist.*, 744 F.3d 112, 121 (3d Cir. 2014), *cert. denied*, 575 U.S. 1008 (2015) (quoting *Transamerica Occidental Life Ins. Co. v. Aviation Off. of Am., Inc.*, 292 F.3d 384, 389 (3d Cir. 2002)).

[29] *Id.* (quoting *Great Lakes Rubber Corp. v. Herbert Cooper Co.*, 286 F.2d 631, 634 (3d Cir. 1961) then citing *Transamerica*, 292 F.3d at 389-90).

[30] *Id.* (citing *Transamerica*, 292 F.3d at 391).

[31] *Id.*

[32] ECF 47, ¶ 10.

[33] *Rice Drilling B, LLC v. Scott*, 324 A.3d 663, 680 (Pa. Super. Ct. 2024).

[34] *Id.*

[35] *Lower Bucks Cnty. Joint Mun. Auth. v. Koszarek*, 244 A.3d 54, 72 (Pa. Commw. Ct. 2020) (quoting *Al Hamilton Contracting Co. v. Cowder*, 644 A.2d 188, 192 (Pa. Super. Ct. 1994)).

[36] *Id.*

[37] *McCarthy v. Jauregui*, No. 21-1759, 2024 WL 1313868, at *6 (M.D. Pa. Mar. 27, 2024); *L. Offs. of Bruce J. Chasan, LLC v. Corcoran*, No. 1148 EDA 2024, 2025 WL 2814839, at *5 (Pa. Super. Ct. Oct. 3, 2025) (quoting *Rosen v. Am. Bank*, 627 A.2d 190, 192 (Pa. Super. Ct. 1993)).

[38] *Trs. of the Gen. Assembly of the Lord Jesus Christ of the Apostolic Faith, Inc. v. Patterson*, No. 21-634, 2023 WL 3767737, at *7 (E.D. Pa. June 1, 2023) (quoting *EMC Outdoor, LLC v. Stuart*, No. 17-5172, 2018 WL 3208155, at *3 (E.D. Pa. June 28, 2018) (cleaned up)).

[39] *Id.*

[40] *Houck v. U.S.*, No. 24-2151, 2025 WL 725261, at *6 (E.D. Pa. Mar. 6, 2025) (citing *Rosen*, 627 A.2d at 192).

[41] *Id.* at *1.

[42] *Id.* at *6.

[43] *Id.* (quoting *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 306 (3d Cir. 2003)).

[44] *Id.* at *6–7.

[45] *McCarthy v. Jauregui*, No. 21-1759, 2024 WL 1313868 (M.D. Pa. Mar. 27, 2024).

[46] *Id.* at *6.

[47] *Id.* at *7.

[48] *Id.* at *5 (quoting RESTATEMENT (THIRD) OF TORTS – LIABILITY FOR ECONOMIC HARM, § 26 Comment b).

[49] *Id.* at *6.

[50] *Id.* at *7.

[51] *EMC Outdoor, LLC v. Stuart*, No. 17-5172, 2018 WL 3208155 (E.D. Pa. June 28, 2018).

[52] *Id.* at *4 (quoting *Gen. Refractories Co.*, 337 F.3d at 304).

[53] *Id.* at *3 (quoting *Barakat v. Del. Cnty. Mem'l Hosp.*, No. 97-2012, 1997 WL 381607, at *2 (E.D. Pa. July 2, 1997)).

[54] *Trs. of Gen. Assembly of Lord Jesus Christ of Apostolic Faith, Inc. v. Patterson*, No. 21-634, 2023 WL 3767737 (E.D.Pa. June 1, 2023).

---

[55] *Id.* at *6–7.

[56] *Id.* at *7 (quoting *Cameron v. Graphic Mgmt. Assocs., Inc.*, 817 F. Supp. 18, 22 (E.D. Pa. 1992)).

[57] *Schwartz v. OneWest Bank, FSB*, 614 F. App'x 80, 83–84 (3d Cir. 2015).